UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JEAN ALLEN,                          )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )
                                     )     Case No. 1:24-cv-00019-SNLJ
DOUGLAS COLLINS,                     )
                                     )
          Defendant.                 )

**MEMORANDUM AND ORDER**

Plaintiff Jean Allen, proceeding *pro se*, filed this lawsuit alleging that employees of the Department of Veterans Affairs violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, following her request for a reasonable accommodation due to a medical condition. This matter is before the Court on defendant's Motion to Dismiss or, alternatively, for Summary Judgment.  [Doc. 54].  The motion is fully briefed.  For the reasons stated below, the motion for summary judgment is granted.

**I.  LEGAL STANDARD**

As a preliminary matter, the Court must determine the applicable legal standard for defendant's motion.  Generally, a motion to dismiss "will succeed or fail based upon the allegations contained in the face of the complaint." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992).  "A motion to dismiss pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court." *Id.* (cleaned up); *see also* Fed. R. Civ. P. 12(d).  "All parties must be given a reasonable opportunity to present all the material that is pertinent to the

motion."  Fed. R. Civ. P. 12(d).  "Constructive notice that the district court will consider matters outside of the complaint is sufficient."  *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 949 (8th Cir. 1999) (cleaned up).  Where the nonmoving party submits materials outside the pleadings in support of an opposition to a motion to dismiss, a failure to provide formal notice that the court will consider matters outside the pleadings is harmless.  *Id.*

Here, defendant's motion provided notice to Allen that he was seeking summary judgment under Federal Rule of Civil Procedure 56.  Defendant's motion and memorandum in support focus on summary judgment.  [Docs. 54, 59].  Defendant submitted a Statement of Uncontroverted Material Facts and 136 pages of exhibits.  [Docs. 54, 54-1, 54-2, 54-3, 54-4, 54-5, 54-6, 54-7, 55].  Defendant culled the exhibits from documents previously filed by Allen.   [Docs. 21, 55 at n.1].  In response, Allen addressed defendant's motion for summary judgment, responded to the Statement of Uncontroverted Material Facts with citations to the documents submitted by defendant, and cited other documents in the record.  [Docs. 62, 62-1, 62-2, 62-3].  Accordingly, the Court finds it proper to address defendant's motion as a Rule 56 motion for summary judgment.

Under Federal Rule of Civil Procedure 56(a), summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(a).  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving

2

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up).  The burden then shifts to the nonmoving party to "present specific evidence, beyond mere denials or allegations that raise a genuine issue for trial." *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (cleaned up).  In asserting a factual dispute, the nonmoving party "must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED.R.CIV.P. 56(c)(1).  Similarly, Local Rule 4.01 requires:

> Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts."  The Response must set forth each relevant fact as to which the party contends a genuine issue exists.  The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies.  The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts.  All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

However, the Court will not consider factual assertions or responses thereto that are not supported by citations to the record.  *See Benford v. Schneider Nat'l Carriers, Inc.*, 2021 WL 3033346 at *1 (E.D. Mo. July 19, 2021).

## II.  BACKGROUND

Plaintiff Jean Allen filed this lawsuit alleging that employees of the Department of Veterans Affairs ("VA") violated the Rehabilitation Act, 29 U.S.C. § 701 et seq., following her request for a reasonable accommodation due to a medical condition.  [Doc. 1].  In her Second Amended Complaint, Allen reasserts the Rehabilitation Act claim and adds a claim under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (Title VII). [Doc. 49].  She supports both claims with allegations that the VA failed to provide a reasonable accommodation for her disability, retaliated against her for requesting an accommodation, and subjected her to a hostile work environment.  [*Id.*].

Defendant argues that the Second Amended Complaint lacks sufficient factual allegations to support a claim under Title VII, and that the undisputed facts fail to establish a violation of the Rehabilitation Act.  [Docs. 54, 59].  In response, Allen concedes that the Second Amended Complaint does not state a Title VII claim.[1]  [Doc. 62 at 1].  Accordingly, defendant is entitled to judgment as a matter of law on the Title VII claim, and the motion is granted on that claim.

---

[1] Title VII prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin." *Winfrey v. City of Forrest City*, 882 F.3d 757, 758 (8th Cir. 2018).  Plaintiff alleges that she was discriminated against because of her disability.

### III. EXHAUSTION AND DESIGNATION OF CLAIMS

A federal employee must exhaust administrative remedies by filing a complaint with the appropriate Equal Employment Opportunity office representative or agency before bringing an employment discrimination claim in federal court pursuant to the Rehabilitation Act. *See Ballard v. Rubin*, 284 F.3d 957, 964 n. 6 (8th Cir. 2002) ("[a]dministrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer"). Allegations outside the scope of an EEO complaint may not be brought before the Court. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012).

Allen filed her complaint on June 28, 2022. [Docs. 8-1, 8-2, 21-1, 54-1]. During the administrative process, the claims made and investigated were designated as: (1) failure to provide a reasonable accommodation for her disability, (2) retaliation for requesting an accommodation, and (3) a hostile work environment. [*Id.*]. Allen's allegations were limited in scope to events from August 3, 2021 to May 3, 2022. [*Id.*]. The Court finds that the following allegations concerning Allen's claims that were

5

addressed during the administrative process are properly included in this lawsuit.

> From September to November 2021, additional medical documentation was demanded to process Allen's reasonable accommodation request.
>
> In March and April 2022, Allen was repeatedly contacted about whether she would accept the Advanced Medical Support Assistant (AMSA) position with a salary at GS-6, step 5, as opposed to the GS-6, step 9 counteroffer accepted by the VA.
>
> From March to May 2022, the Call Center Supervisor refused to conduct supervisory duties for Allen.
>
> From March to May 2022, the Call Center Supervisor scrutinized Allen's work, informed Allen that she was not in the supervisor's chain of command and refused to make a training assignment.
>
> In 2022, multiple supervisors inquired if she would be seeking medical disability or retirement.

[*Id.*].

In contrast to the limited scope of the EEO complaint, Allen's Amended Complaint and response to defendant's motion encompass allegations concerning events occurring prior to August 3, 2021, and subsequent to June 28, 2022.  These events, which were not included in the EEO complaint, were not exhausted and therefore cannot, as a matter of law, support a claim under the Rehabilitation Act.

> Allen's submission of requests for reasonable accommodation prior to August 3, 2021 that were not processed.  [Docs. 49 at 5, 62-1 at 4].
>
> A "downgrade" in Allen's yearly evaluation in November 2021 after her supervisor expressed to the Reasonable Accommodations Coordinator (RAC) that she believed Allen needed to return to the office.  [Docs. 49-1 at 1, 49-4 at 3, 62 at 3-4]
>
> Accusations that Allen falsified a document, lied, and/or committed fraud by modifying the Offer of Reassignment. [Doc. 49-4 at 2].

6

A failure to cooperate in the EEOC investigation by VA employees.  [Docs. 49-4 at 3, 62 at 4, 62-1 at 5-6].

Delay in a step increase due to excessive time in LWOP status.  [Doc. 49-4 at 4].

A failure of "upper management" to intervene or investigate allegations reported to them in September 2022.  [*Id.* at 5].

The Court finds that defendant is entitled to judgment as a matter of law on these issues because they cannot be litigated in this case.

### IV. FACTS

The Court finds the following undisputed facts are established by the documents submitted by the parties, including the administrative record.[2]  Allen was employed as a licensed practical nurse (LPN) with the Department of Veterans Affairs (VA).  [Docs. 49 at 3, 5; 55 at ¶ 1].  An essential function of the LPN position is "hands-on patient care," which requires the LPN to be in close contact with sick patients.  [Doc. 55 at ¶ 2].  The VA pays nurses pursuant to a special rate.  [*Id.* at ¶ 3].  The special rate "is the result of recruitment or retention problems at a particular VA health care facility and higher non-Federal pay rates in a specific labor market."  [*Id.* at ¶ 4].  As an LPN, Allen's pay rate was Grade 6, Step 5.  [*Id.* at ¶ 5].

On August 5, 2021, Allen submitted a request for an accommodation to telework

---

[2] Defendant's statement of facts complies with Rule 56 and Local Rule 4.01. Allen filed a Statement of Uncontroverted Material Facts that includes a response to the defendant's statement of facts.  However, instead of admitting or denying defendant's facts, Allen restates them either verbatim or with modifications.  Although she did not file exhibits with her response, she cites to documents she filed in this Court on June 13, 2024 [Docs. 21-1 to 21-11] for some, but not all, of the modifications.  The statement of undisputed facts contains only those facts properly supported by the record.  Facts submitted by the parties outside the scope of the EEO complaint—before August 3, 2021 and after June 28, 2022—are not included.

due to a medical condition.[3]  [Doc. 54-2 at 18].  She began teleworking on August 4, 2021, with the approval of her supervising manager.  [Docs 54-2 at 18; 55 at ¶ 6].  On August 23, 2021, Allen's physician responded to a request for medical documentation.  [*Id.* at ¶ 7].  He opined that "[d]ue to her current medical condition, she should work from home for her well being and health."  [*Id.* at ¶ 8].  He noted that she was "on immunosuppressant drugs, high risk for infection."  [*Id.*].  Finally, he stated that "[w]orking from home will keep her from getting any serious infection due to compromised immune system."  [*Id.* at ¶ 9].  Shounita Brooks, the VA's Reasonable Accommodation Coordinator (RAC), acknowledged receipt of the medical documentation on August 23, 2021.  [Doc. 62-2 at ¶ 11].

On September 10, 2021, Brooks reviewed the physician's response.  [Doc. 55 at ¶ 10].  Brooks informed Allen that her physician needed to state her diagnosis on the medical documentation.  [*Id.* at ¶ 11].  On September 13, Allen agreed to contact her physician for the requested documentation.  [*Id.* at ¶ 12].  On September 20, Rebecca Foy, MSN RN, Chief Nurse Ambulatory Care and Daily Operations, followed up with Allen via e-mail regarding the request for a specific diagnosis.  [*Id.* at ¶ 13].  Foy asked Allen to provide the information to her or Brooks by the end of the week.  [*Id.*].  Allen responded to the e-mail on September 24, stating that her physician's office had not included the medical diagnosis in the original letter due to HIPAA, but would provide the information at her request.  [*Id.* at ¶¶ 14, 16, 17].

---

[3] In the box for "date of request" it states August 3, 2021 and in the box for "today's date" it states August 5, 2021.  [Doc. 54-2 at 18].

On October 28, Allen asked Brooks for a copy of her paperwork and whether she had received the additional documentation from her physician. [*Id.* at ¶ 18]. Brooks replied that she had not received the requested medical documentation. [*Id.* at ¶ 19]. The following day, Allen forwarded the medical documentation to Brooks. [*Id.* at ¶ 20]. After Brooks acknowledged receipt of the updated medical, Allen sent Brooks an email stating:

> I know that there are positions available to work from home full time. I am terrified of getting covid and do not go out of my home. I am able to do my doctor appointments virtually and do not go out to shop or dine as I have family that bring[s] it home for me. I am willing to even take a cut in grade/pay in order to keep my job and stay in the home at this time.

[Docs. 55 at ¶¶ 21, 23; 21-2 at 50; 21-6 at 85].

On November 1, Brooks acknowledged receipt of the "updated medical documentation" and stated, "I will work with your supervisor to try to come up with an accommodation for you." [Doc. 55 at ¶ 25]. In a subsequent email on November 1, Brooks notified Allen that if she could not be accommodated in her current position, she would be put into a 90-day job search phase, where they would try to find an open, vacant, funded position for which she qualified.[4] [*Id.* at ¶ 26].

While in the job search process, Allen sent an email on December 9, 2021 inquiring about an Advanced Medical Support Assistant (AMSA) position. [*Id.* at ¶¶ 27, 28]. On December 15, Malika Singh, who replaced Brooks as Allen's RAC, notified Allen that she needed to provide an updated, redacted resume and complete VA Form

---

[4] Without any citations to the record, Allen states Brooks "advised [her] that until an accommodation is found, she [] could be mandated to the clinic." [Doc. 62-2 at ¶ 20].

0857h, Employee Limitations on Reassignment Options.  [Docs. 21-5 at 22-23; 54-4 at 10-11].  Singh informed Allen that "if the 90-day search does not result in a job that is vacant or soon-to-be vacant for [Allen] to be Reassigned into after looking at qualifications and [her] limitations/restrictions, then it can result in medical separation." [Docs. 21-5 at 22-23; 54-4 at 10-11; 55 at ¶ 30].  Singh also informed Allen that "[t]here is also a chance for jobs found through Reassignment to be of lower pay, since Reassignment looks at jobs at same pay level or below." [Docs. 21-5 at 22-23; 54-4 at 10-11; 55 at ¶ 31].

Allen completed VA Form 0857h and submitted it along with a resume on December 15.  [Docs. 54-4 at 33; 55 at ¶ 29].  On that form, Allen stated her willingness to consider reassignment "to a lower grade position if no position is available at [her] current pay level," but not less than $48,000.  [Docs. 54-4 at 13; 55 at ¶ 29].  During a discussion via Teams on December 30, HR Specialist Maurice Neely informed Allen that her resume did not meet the qualifications for the AMSA position.  [Doc. 54-4 at 13-15, 20].  Neely suggested that the telework positions available in the VA were "administrative type positions."  Allen stated that she would consider any position that is pay grade 6.  [Docs. 54-4 at 21; 55 at ¶ 33].

On January 20, 2022, Allen contacted Carol Stewart regarding the AMSA position.  [Doc. 21-3 at 35].  Stewart responded the following day and advised Allen that she had reviewed her resume and deemed her not qualified for the AMSA position.  [*Id.* at 34].  Allen shared Stewart's comments with Venable, who suggested that she tweak her resume to reflect the knowledge and experience required for the position as stated in

10

the job posting.  [*Id.* at 33-34].  Allen responded stating her resume had already been "tweaked" with assistance from her union representative.  [*Id.* at 33].

By January 28, 2022, Allen had submitted an updated resume that met the qualifications for an AMSA, but the position allowed for only ad hoc telework.  [Docs. 55 at ¶¶ 37, 38; 54-4 at 14-15].  Allen was advised that they were holding a decision to give her an opportunity to choose the job.  [Doc. 55 at ¶ 38].  On January 31, Allen responded, expressing concern that in-office time was required for the position, and her request for accommodation was for telework.  [Docs. 54-5 at 9; 55 at ¶¶ 39, 40].  She asked whether the VA might alter a "PACT AMSA position" for her in the Cape Girardeau office.  [Docs. 54-5 at 9; 55 at ¶ 41].  On February 2, Singh indicated that she would check with HR as to whether another position was available and asked if Allen was declining the current offer.  [Doc. 55 at ¶¶ 42, 43].  Allen responded that she was not declining the offer but wanted to clarify the status regarding telework and whether there might be other AMSA positions that would be more easily adapted to full telework.  [*Id.* at ¶ 44].

On February 4, Neely identified an AMSA, GS-6 vacancy in the Call Center that was eligible for 100% telework.  [*Id.* at ¶ 46].  Singh forwarded the position's functional Statement to Allen on February 16.  [*Id.* at ¶ 47].  On February 24, Allen responded, indicating that she was aware of some job openings in the Care in the Community Department of Poplar Bluff.  [*Id.* at ¶ 48].  Neely examined the positions and informed Allen that these were GS-5 positions rather than GS-6.  [*Id.* at ¶ 49].

On February 24, Neely signed and forwarded to Singh an Offer of Reassignment

to the Call Center where the pay level was listed at GS-6.  [Docs. 55 at ¶ 50-51; 62-2 at ¶ 30].  Singh forwarded this offer to Allen on February 28.  [Docs. 55 at 53; 62-2 at ¶ 33].  On February 28, Allen signed and returned the Offer of Reassignment with the addition of "Step 9" written beside the GS-6 pay level.  [Docs. 55 at ¶¶ 52, 54; 62-2 at ¶¶ 32, 34; 63 at ¶ 34].

On March 9, 2022, Stewart notified Allen that her "reassignment to the Business Office Call Center will be effective on Sunday, March 13, 2022. Your new position title will be Advanced Medical Support Assistant, GS-0679-06/S5 with a salary of $45,631."  [Doc. 55 at ¶ 56].  On March 14, 2022, Allen responded, "I received your email regarding reassignment however your email indicates Grade 6 step 5. Here is a copy of the reassignment letter that I signed. It states I am to be grade 6 step 9." [*Id.* at ¶ 57].  Neely responded to Allen's email the same day stating, "the form I completed and signed definitely did not have a step on it. … As a reassignment, we are to use the current grade and step. To utilize a Special Salary rate, which you are on as a LPN, for a reassignment to a non-special rate position is not appropriate. We will hold off coding the reassignment until the issue is rectified." [*Id.* at ¶ 58].  Neely also included Singh and her supervisor, LaWanda Newton, in the email chain. [*Id.* at ¶ 59].  Newton advised Allen and the others that Allen's new position could not "be at a higher pay rate than the employee['}s current pay rate (GS6, Step 5), this is not a promotion."

Allen and her union representative, Harold Lampley, both responded to Newton's email.  [*Id.* at ¶¶ 60, 61].  Allen stated that the proposed salary was a demotion and nearly $6000 below her current salary.  [*Id.* at ¶ 60].  Lampley stated that because the specific

12

pay grade with step level was not clearly articulated, it was clarified prior to Allen signing the Offer of Reassignment form.  [*Id.* at ¶ 61].  He claimed the VA agreed to the altered document because it was in the VA's possession 14 days before to HR's letter advising Allen of her position, title, and step.  [*Id.*].  He also claimed that Singh accepted the form.  [*Id.*].  He demanded that the VA "correct the reassignment to AMSA Business Office email to reflect" the GS-6, step 9 pay level included in the document Allen signed. [*Id.*].

Newton and Neely responded to Allen and Lampley's emails.  [*Id.* at ¶¶ 62, 63]. Newton replied that "[t]here is never a job announced or offered at any step, just grade level." [*Id.* at ¶ 62].  She noted that the Reassignment Form, 580, "ask[s] at what lower grade are you willing to accept, not step." [*Id.*].  Neely noted that "Pay Level" is just another way of saying "pay grade or grade level," citing OPM.gov.  [*Id.* at ¶ 63].  He also stated that "Ms. Singh does not sign the form and was only attempting to obtain Ms. Allen's signature to determine if she was accepting the reassignment." [*Id.*].  Finally, Neely stated that "[i]f Ms. Allen does not find this reassignment acceptable, she can decline the reassignment."  [*Id.*].

Neely subsequently contacted Newton to note that Allen's reassignment had not been recoded and inquired as to whether Stewart should contact Allen to determine if she accepted the position.  [*Id.* at ¶ 64].  Newton confirmed that Stewart should obtain Allen's decision.  [*Id.*].  On April 15, Stewart sent Allen an email asking her to confirm her acceptance of the position by April 18, 2022. Stewart also noted that if Allen did not respond by the close of business on April 18, the HR Department "will conclude that

13

[Allen] do[es] not agree with this reassignment offer and [she] will need to contact your

Reasonable Accommodation Coordinator." [*Id.* at ¶ 65].  Lampley, rather than Allen,

responded to Stewart stating:

> [T]his position has already been accepted by Ms. Allen, the Agency, she has already transferred to the position, and is in the process of being trained for this position. Therefore, this matter you're raising is already deemed to be closed and further pursuit of this matter will be seen as harassment, retaliation, and targeting an individual with a disability. Please confirm that this matter is now closed and the transfer complete at the pay rate [in the altered form Allen signed.

[*Id.* at ¶ 66].  On April 20, Singh asked Allen to sign the original Offer of Reassignment.

[*Id.* at ¶ 67].

Stewart had previously advised Sharece Smith and others that Allen would assume

the telework position at the Business Office Call Center through the Reasonable

Accommodation Process and that March 13 would be the effective date. [*Id.* at ¶ 68].

Shortly thereafter, Smith contacted Allen and informed her of the start date, and how to

obtain IT equipment for the position. [*Id.* at ¶ 69].  On April 6, 2022, Smith was notified

of an investigation concerning Allen's offer letter and that Allen never officially accepted

it.  [*Id.* at ¶ 70].  On or about April 12, 2022, Allen was returned from the Call Center's

Time and Leave (T&L) back to Primary Care's T&L. [*Id.* at ¶ 71].

Due to Allen's condition, she could no longer perform her LPN duties in the

clinic, and she was detailed to work in the Call Center. [*Id.*].  As an LPN detailed to the

Call Center, she was paid at a higher rate, the Special Rate paid to LPNs but performing

lower-paying duties at the Call Center.  [*Id.* at ¶ 72].

On April 26, Smith thought that Allen put something inappropriate in a chart, and

14

she asked Allen to remove it.  [*Id.* at ¶ 73].  On April 27, Allen acknowledged, with respect to the incident, that

> [A]fter speaking to Dr. Saba yesterday I think she made me understand that I am not expected nor required to chart or do things as I have done over the past 25 years. I have not felt good physically for quite some time now and as my family pointed out to me, I am not always the easiest person to be around at times especially when I feel as bad as I have lately.

[*Id.* at ¶ 74].  Because Allen was detailed to the Call Center rather than transferred, Smith was not her supervisor and could not assign her training courses in the Talent Management System (TMS).  [*Id.* at ¶ 75].  However, Allen could self-assign them. [*Id.*].  When Allen asked Smith to complete a form for her carpel tunnel workers' compensation claim, Smith declined because she had no knowledge regarding the matter and was not comfortable completing the documentation.  [*Id.* at ¶ 76].

Allen remained detailed to the Call Center through the administrative process until she was later released without restrictions to work as an LPN in office in 2023.  [*Id.* at ¶ 87].  She was permitted to telework at her LPN salary.  [*Id.*].

## V. DISCUSSION

Allen claims that the VA violated the Rehabilitation Act by (1) failing to provide a reasonable accommodation for her disability, (2) retaliating against her for requesting an accommodation, and (3) subjecting her to a hostile work environment.  [Doc. 49].  The Rehabilitation Act provides a private cause of action to individuals subjected to disability discrimination by the federal government and its agencies, including in employment activities.  *See* 29 U.S.C. § 794; *Gardner v. Morris,* 752 F.2d 1271, 1277 (8th Cir.1985).  The Rehabilitation Act prohibits discrimination against an "otherwise qualified individual

15

with a disability … solely by reason of her or his disability."  29 U.S.C. § 794(a).

### 1.  *Reasonable accommodation*

To establish a *prima facie* case of discrimination under the Rehabilitation Act, the plaintiff must show that she was a qualified individual with a disability and that she suffered an adverse employment decision because of the disability.  *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016).  A qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).[5]  Discrimination under the Rehabilitation Act encompasses "failure to provide reasonable accommodations to a qualified individual's known disability." *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014).

"In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations."  *Peebles v. Potter*, 354 F.3d 761,767 (8th Cir. 2004). Specifically, "[a]n employer discriminates against an employee if the employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1059 (8th Cir. 2016) "); *see also* 42 U.S.C.

---

[5] The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act to determine whether a violation has occurred.  29 U.S.C. § 794(d); *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004).  Additionally, "decisions interpreting either the ADA or the Rehabilitation Act are applicable and interchangeable to claims under each statute."  *Withers*, 763 F.3d at 1003.

§ 12112(b)(5)(A); 29 C.F.R. § 1630.9(a).  Because a failure to provide a reasonable accommodation is a discriminatory act itself,  there is no requirement to demonstrate any adverse action other than the failure to accommodate itself.  *Id.* at 766.

A modified burden-shifting analysis is applied to a failure to accommodate claim under the Rehabilitation Act.  *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1182 (8th Cir. 2019).  Because Allen claims that she could not perform the essential functions of her job without an accommodation, she must "make a facial showing that reasonable accommodation is possible."  *Id.*  The burden of proof then shifts to the VA to show that it is unable to accommodate Allen.  *Id.*  "The employee must be otherwise qualified for the reassignment position."  *Id.*  "[T]he plaintiff's burden, upon a defendant's motion for summary judgment, is only to show that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases."  *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (cleaned up).

"The disabled employee must be seeking an existing [vacant] position within the company; the employer is not required to create a new position as an accommodation."  *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000).  Further, an employer "need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee."  *Hill v. Walker*, 737 F.3d 1209, 1217 (8th Cir. 2013) (cleaned up).  Nor is an employer required to accommodate an employee based on the employee's preference.  *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1183 (8th Cir. 2019); *see also Cravens*, 214 F.3d at 1019 ("the employer is not obligated to provide the accommodation requested or preferred by the employee; the reassignment

17

need only be a reasonable accommodation").

For a failure to accommodate claim to survive summary judgment, an employee must also show that the "employer failed to engage in the interactive process in good faith." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 457 (8th Cir. 2022). The employee must show that the "employer did not make a good faith effort to assist the employee in seeking accommodations." *Id.* Good-faith participation in the interactive process may be demonstrated by providing an interim accommodation. *See Leblanc v. McDonough*, 39 F.4th 1071, 1077 (8th Cir. 2022).

Allen alleges the VA failed to accommodate her in several ways. First, she claims the reasonable accommodation coordinator's request for additional medical documentation before processing the request violated the Rehabilitation Act. An "employer may ask for reasonable documentation concerning the employee's disability and functional limitations" if the "need for accommodation is not obvious." *Kobus v. Coll. of St. Scholastica, Inc.*, 608 F.3d 1034, 1039 (8th Cir. 2010). "Where a disability, resulting limitations, and necessary accommodations, are not open, obvious, and apparent to the employer, a plaintiff who fails to disclose her disability and request an accommodation from her employer cannot show that she is qualified with accommodation." *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 846 (8th Cir. 2015). Therefore, the VA's request for additional medical documentation did not violate the Rehabilitation Act.

Additionally, Allen contends the VA refused to recognize her counteroffer even though it was accepted. Contrary to Allen's claim, the VA never accepted her

18

counteroffer.  Allen argues that Singh accepted the counteroffer.  However, she provides no factual or legal support for the claim that Singh, as a Reasonable Accommodations Coordinator, could accept a counteroffer to an offer made by Human Resources Officer Neely.  Singh merely forwarded Neely's Offer of Reassignment to Allen for her signature and then returned the signed document to HR.

Further, the VA had no obligation to accept the counteroffer, nor was its action discriminatory under the Rehabilitation Act.  On the contrary, if an individual with a disability "rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified."  29 C.F.R. § 1630.9(d).  Allen rejected the reasonable accommodation offered by the VA when she (or her representative) modified it.  A counteroffer constitutes a denial of the offer and the extension of a new offer.  *Tri-Lakes Title & Escrow v. Morris Group*, 443 S.W.3d 76, 79 (Mo. App. S.D. 2014) ("Any acceptance that includes new or variant terms from the offer presented amounts to a counter-offer and a rejection of the original offer.").  By rejecting the proposed accommodation, she was no longer considered a qualified individual under the Rehabilitation Act, 29 C.F.R. § 1630.9(d), and the VA was no longer legally required to provide her with a reasonable accommodation.

Allen also alleges there were unreasonable delays in the accommodation process.  The timeline, however, does not show any significant or unreasonable delays.

August 3-5, 2021 – Allen submits a request for reasonable accommodation due to

19

a medical condition and begins teleworking.

August 23, 2021 – Allen's physician responded to a request for medical documentation in support of her request for an accommodation.

September 10, 2021 – The RAC requested additional medical information, including Allen's exact medical diagnosis.

October 29, 2021 – Allen submitted the requested additional medical information.

November 1, 2021 – The RAC notified Allen that she would work with her supervisor to determine whether an accommodation could be made in her current position.

December 15, 2021 – Singh notified Allen that the 90-day reassignment process had begun. Allen provided a resume.

January 4, 2022 – Allen provided a revised resume.

January 21, 2022 – Allen provided another revised resume to mirror a vacancy.

January 28, 2022 – Allen is informed of an ad hoc telework vacancy.

February 16, 2022 – Singh notified Allen that a vacancy was open in the call center that was 100% telework.

February 24, 2022 – Allen is offered the call center position.

March 9, 2022 – HR sends Allen an email confirming the date of her reassignment (March 13), the position title, and salary.

Additionally, any alleged delay in finding a suitable reassignment under the circumstances was not a violation of the Rehabilitation Act. Allen commenced teleworking at her LPN salary immediately after submitting her request for a reasonable accommodation, and she was still teleworking at that salary when she filed the EEO complaint.

For the reasons stated, the undisputed facts do not support a claim of failure to

20

provide a reasonable accommodation under the Rehabilitation Act.  As a result, the claim fails as a matter of law, and defendant is entitled to summary judgment.

### 2. Retaliation

To prove a retaliation claim under the Rehabilitation Act, Allen must show that "(1) [s]he engaged in protected conduct, (2) a reasonable employee would have found the challenged retaliatory action materially adverse, and (3) the adverse action was causally linked to the protected conduct." *Trambly v. Bd. of Regents of Univ. of Nebraska*, 145 F.4th 922, 927 (8th Cir. 2025).  Requesting a reasonable accommodation is a protected activity. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907–08 (8th Cir. 2010).  "An action is materially adverse if it produces an injury or harm that might have dissuaded a reasonable worker from making a complaint." *Trambly*, 145 F.4th at 927 (cleaned up); *see also Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 357-58 (discussing difference between adverse action in discrimination versus retaliation claims).  "Trivial harms such as petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.*

Allen alleges the VA retaliated by : (a) over scrutinizing her work; (b) delaying her carpal tunnel workers' compensation claim; (c) failing to assign her Talent Management System (TMS) training; and (d) transferring her to the business office. However, scrutinizing work, delaying a workers' compensation claim, not assigning training, and transferring an individual are not adverse employment actions. *See Hill v. City of Pine Bluff*, 696 F.3d 709, 715 (8th Cir. 2012) (scrutinization); *McCullers v. Napolitano*, 427 F. App'x 190, 196 (3rd Cir. 2011) (workers' compensation delay); *Box*

*v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006) (training); *Elnshar v. Speedway Superiameria, LLC*, 484 F.3d 1046, 1056 (8th Cir. 2007) (transfer).  A reasonable employee would not have considered these actions to be retaliatory or materially adverse. Further, there is no evidence that the actions were acts of retaliation for Allen's reasonable accommodation request.  Instead, this claim is based on misperceptions, miscommunications, and hurt feelings.  The retaliation claim not only fails as a matter of law but is also borderline frivolous.

### 3.  *Disability-based Hostile Work Environment*

To prevail on a claim for a hostile work environment under the Rehabilitation Act, Allen must show: 1) she is a qualified individual with a disability; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) the employer knew of or should have known of the harassment and failed to take prompt remedial action.  *Stipe v. Shinseki*, 690 F. Supp. 2d 850, 883 (E.D. Mo. 2010). Determining whether a plaintiff has been subjected to a hostile work environment is based on "the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance."  *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 779 (8th Cir. 2012).  A plaintiff "must show both that the offending conduct created an objectively hostile work environment and that she subjectively perceived her working conditions as abusive."  *Bowen v. Mo. Dep't of Soc. Servs.*, 311 F.3d 878, 883

22

(8th Cir. 2002).

Moreover, in order for the alleged harassment to affect a term, condition, or privilege of employment, it must be so severe or pervasive as to alter the conditions of the victim's employment. *Stipe*, 690 F.Supp.2d at 883. The employee must also show that the alleged harassment affected a term, condition, or privilege of employment –the plaintiff must meet a "high threshold." *Liles v CS McCrossan Inc.*, 851 F.3d 810, 823 (8th Cir. 2017). To demonstrate this element, plaintiff must show the workplace environment was "both subjectively and objectively offensive," in that the conduct at issue was "extreme in nature and not merely rude or unpleasant." *Id*.

Allen's allegations of harassment do not factually or legally constitute harassment. The communications from HR asking whether she was accepting the call center position were neither harassing nor hostile. It was not objectively harassment or hostility for the call center supervisor to inform Allen that she was not under her direct supervision, to refrain from assigning training that Allen could independently self-assign, and to instruct Allen to make a correction in a chart. The confusion over who Allen's supervisor was and who would approve leave requests arose from her rejection of the reasonable accommodation and communication issues related thereto.

Finally, Allen's claim that she received harassing inquiries in 2022 as to whether she would be seeking medical disability or retirement is not supported by the record. According to the administrative record, Allen reported that four individuals—Venable, RAC Brooks, EEO Program Manager Taylor, and HR Specialist Deborah Hodges—made these inquiries. [Doc. 21-1 at 79]. Venable admitted to asking Allen if she had

23

information regarding disability/medical retirement in case she wanted to consider those options.  [*Id.* at 80].  She then provided such information at Allen's request.  [*Id.*]. According to Taylor, during a conversation about the reasonable accommodation process, they spoke about the possibility of a medical/disability retirement, and she referred Allen to Hodges.  [*Id.* at 85].  Hodges stated that Allen requested information regarding how to apply for retirement based on medical disability.  [*Id.*].  RAC Brooks left the VA in December 2021 and does not recall having any such discussion with Allen before her departure.  [*Id.*].

Additionally, Allen's allegations in support of her hostile work environment claim do not collectively constitute objectively harassing, hostile, or offensive behavior. The undisputed facts do not show that Allen was subjected to any harassment sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment.  As a result, Allen's hostile work environment claim fails as a matter of law.

## VI. CONCLUSION

For the reasons stated, the undisputed facts do not support Allen's claims that the VA failed to provide a reasonable accommodation for her disability, retaliated against her for requesting an accommodation, and subjected her to a hostile work environment.  The circumstances surrounding Allen's medical accommodation request and the accommodation process clearly evoked strong emotions.  Such emotions resulted in misperceptions and misunderstandings of events and statements that were neither retaliatory nor hostile.  The VA participated in the interactive process in good faith,

24

allowing Allen to telework as an interim accommodation, providing guidance on revising her resume to fit the job description of the position she requested, and continuing to offer her the reassignment she had rejected.  By rejecting the proposed accommodation, Allen was responsible for terminating the interactive process and was no longer entitled to relief.  Nonetheless, she continued to telework at her special LPN salary, even though she was not performing LPN duties.  Because Allen's claims fail as a matter of law, defendant is entitled to summary judgment in his favor, and the motion is granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. 54] is **GRANTED**.  A separate Judgment will be entered.

**IT IS HEREBY CERTIFIED** that an appeal from this Order would not be taken in good faith.

**SO ORDERED** this 31st day of March, 2026.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE